United States Courts
Southern District of Texas
FILED
*September 25, 2024*
Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | §    CRIMINAL NO. **4:24-cr-00507** |
| | § |
| v. | § |
| | § |
| **GHOLAM REZA GOODARZI** | § |
| a/k/a "Ron Goodarzi" | § |

## INDICTMENT

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times material to this Indictment:

1.  Beginning in or around at least August 2020 and continuing through August 2024, Defendant GHOLAM REZA GOODARZI ("GOODARZI"), also known as Ron Goodarzi, conspired with others to violate U.S. sanctions against Iran by willfully procuring, smuggling, and exporting U.S.-origin aviation and oil and gas industry parts, including aviation parts with military applications, for end users in Iran. GOODARZI either hand-carried such aviation parts to Iran or transshipped them to Iran via foreign companies, including companies in the United Arab Emirates. Because these items were destined for Iran, a license was required from the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC"). No license was sought or obtained by GOODARZI in connection with these exports.

### THE DEFENDANT AND CO-CONSPIRATORS

2.  GHOLAM REZA GOODARZI, is a dual United States and Iranian citizen, who resides in both Porter, Texas, and Iran. GOODARZI orchestrated his unlawful scheme to export aircraft parts and oil and gas parts to Iran by purchasing such components from U.S.-based suppliers at the request of his co-conspirators in Iran. GOODARZI then sought to evade sanctions

1

by exporting these items to Iran through Dubai, UAE, among other countries such as Oman. GOODARZI used foreign suppliers to transship parts to Iran and smuggled parts in his checked luggage while personally traveling to and from Iran.

3.  Iranian Individual 1 was an employee of an Iran-based company that was used to procure components for variants of large, fixed-wing aircraft, including unmanned aerial vehicles, and other aviation parts on behalf of the government of Iran.

4.  Iranian Individual 2 was an employee of an Iran-based company that purchased industrial oil and gas components for use in Iran.

## LEGAL BACKGROUND
## THE INTERNATIONAL EMERGENCY ECONOMIC POWERS ACT

5.  The International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701, *et seq.*, granted the President of the United States the authority to deal with unusual and extraordinary threats to the national security, foreign policy, and economy of the United States. Pursuant to that authority, the President could declare a national emergency through Executive Order that had the full force and effect of law. Among other things, IEEPA empowered the President to impose economic sanctions on a foreign country.

6.  On March 15, 1995, the President issued Executive Order 12,957, which found that the actions and policies of the government of Iran constituted an unusual and extraordinary threat and declared a national emergency under IEEPA to deal with that threat. 60 Fed. Reg. 14,615 (Mar. 17, 1995). In two subsequent Executive Orders in 1995 and 1997, the President imposed comprehensive sanctions on Iran and clarified the original declaration of a national emergency. Exec. Order No. 13,059, 62 Fed. Reg. 44,531 (Aug. 21, 1997); Exec. Order No. 12,959, 60 Fed. Reg. 24,757 (May 9, 1995). Since 1997, the President has continued the national emergency with respect to Iran and the 1995 and 1997 Executive Orders.

7. To implement the sanctions, the Secretary of the Treasury, through OFAC, promulgated the Iranian Transactions Regulations, 31 C.F.R. Part 560, which were renamed the Iranian Transactions and Sanctions Regulations ("ITSR") in 2013. With certain limited exceptions not applicable here, absent prior authorization from OFAC in the form of a license, the ITSR prohibit, among other things: (1) the export, reexport, sale, or supply, directly or indirectly, of any goods, technology, or services from the United States, or by a U.S. person wherever located, to Iran; and (2) the engagement by a U.S. person in any transaction or dealing in or related to goods, technology, or services for export, reexport, sale, or supply, directly or indirectly, to Iran. These regulations further prohibit any transaction that evades or avoids, or has the purpose of evading or avoiding, any of the prohibitions contained in the ITSR, including the unauthorized export of goods from the United States to a third country if the goods are intended or destined for Iran. *See* 31 C.F.R. §§ 560.203-560.206.

8. It is unlawful for a person to willfully violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition under IEEPA, including the prohibits set forth in the ITSR. 50 U.S.C. § 1705.

## **THE CONSPIRACY**

9. It was part of the conspiracy that GOODARZI received orders from, and negotiated with, customers in Iran for the procurement of aircraft components, as well as oil and gas components, from unwitting suppliers in the United States, and solicited quotes from, and negotiated with, unwitting suppliers in the United States and elsewhere for the procurement and export of such components from the United States and elsewhere.

10. After negotiating pricing, type and quantity for various aircraft parts and other goods, GOODARZI would either hand-carry the items himself to Iran, or transship the components

to Iran through third parties. For example, on or about May 9, 2021, GOODARZI sent an email to a customer in Iran stating, "I will deliver the bearing to you according to the promise I made 3 weeks ago…The NOV_SKF bearing will arrive in Dubai in 4 days. It takes a week to clear it from customs & load it on the ship for Iran."

11. As another example, in or around late May 2021 and continuing through in or around August 2021, Iranian Individual 2 and GOODARZI exchanged emails about receiving oil and gas parts, specifically IBOPs, Connectors, Yokes, Shell Actuators, and Manifold Assemblies, among other items, in Iran. On or about May 24, 2021, Iranian Individual 2 inquired, "Meanwhile, our rush for YOKE and CONNECTORS is more than other, please tell us when you will deliver them to us in Iran." In response, GOODARZI emailed with a foreign supplier, whom he regularly used to procure oil and gas parts, to confirm when the parts would be delivered to Oman or Dubai. On or about June 16, 2021, GOODARZI emailed Iranian Individual 2 and stated, "You told me you urgently needed the 2 IBOP yokes. I paid $650 to airfreight them from Houston to Dubai & paid someone $550 to transport them from Dubai to Tehran [Iran]. The normal delivery was 60 days or more." In additional exchanges regarding these parts, Iranian Individual 2 identified the high priority items that GOODARZI should have delivered if he could not deliver all of the parts "given [his] restrictions on transferring to Iran."

12. GOODARZI also frequently notified his customers in Iran that he had acquired items for them and would personally hand-carry the items to them. As an example, on or about February 27, 2022, GOODARZI sent an email to Iranian Individual 1 stating that he "might be able to bring [him] a few toggle switches this week." GOODARZI then provided a quote he had received from a U.S.-based company for military-grade toggle switches used in the aviation industry. Iranian Individual 1 then requested quotes for a different product and asked GOODARZI

4

to send the parts "asap." On or about March 3, 2022, GOODARZI informed Iranian Individual 1, "If all goes well, I plan to deliver the parts below to you next week: Circuit Breaker MS22073-3 QTY 2; Amphenol Connector MS3106E18-1S QTY 5; Alternator 1100700718 QTY 1." On or about March 13, 2022, GOODARZI departed the United States on an international flight bound for Iran.

13. Additionally, in or around May 2022, Iranian Individual 1 emailed an address known to be used by Iran Aircraft Manufacturing Industries Corporation ("HESA"). HESA is a U.S.-sanctioned Iranian entity that has provided Unmanned Aerial Vehicles ("UAVs") to Iran's Islamic Republic Guard Corps ("IRGC") and is designated on the U.S. Department of the Treasury's Office of Foreign Assets Control's ("OFAC") Specially Designated Nationals and Blocked Persons List ("SDN List"). Iranian Individual 1 emailed HESA a packing list describing a purchase from the United States and the details of a delivery to Tehran, Iran of twenty spark plugs with reference #ABABIL-017 (Ababil is the name of several variants of large fixed-wing surveillance UAVs manufactured by HESA). The tracking number on this purchase indicated it was "shipped by passenger" and included a photocopy of GOODARZI's Iranian passport. The listed shipping date and arrival date were both May 24, 2022. On or about May 23, 2022, GOODARZI departed the United States on an outbound international flight bound for Iran.

14. On or about June 6, 2022, GOODARZI sent an email to Iranian Individual 1 notifying him that he had acquired "spark plugs" from a U.S. company. Two days later, on or about June 8, 2022, GOODARZI departed the United States on an outbound international flight, with a final destination of Iran. On or about June 10, 2022, GOODARZI sent an email to Iranian Individual 1 stating, "I am in Tehran" and "I have 100 Champion spark plugs plus the 2 orders from [U.S. Company]."

15. On or about November 11, 2022, GOODARZI sent an email to Iranian Individual 1 asking about the delivery of Malin Lockwires, which have aerospace applications. GOODARZI stated, "Do you want me to send the Malin Lockwires to you now or wait for my next trip?" Iranian Individual 1 replied, "We will wait for your next trip." Less than two weeks later, on or about November 24, 2022, GOODARZI left the United States on an international flight bound for Iran.

16. On or about June 30, 2024, GOODARZI was booked on an outbound international flight with a final destination of Tehran, Iran. Prior to boarding his flight, GOODARZI's checked luggage was searched. The following items were found in GOODARZI's luggage:

- AC Delco Remy Voltage Regulators with attached tags identifying them as aircraft parts
- Aircraft bolts
- VS-300MT C series - Three Phase Bridge, 300 A (Power Modules)
- Aerospace Rivet Pins
- Military Standard Steel tension bolts

GOODARZI stated to law enforcement that the parts were to be used in the oilfield industry and further admitted that he procured such parts for Iranian Individual 1 and others.

17. During this border search, the items found were wrapped in articles of clothing, stuffed into rolled socks, stuffed into shoes, hidden inside pockets of pants and jackets, and zipped into other bags, in an effort to hide the items from being discovered during a baggage inspection.

18. On or about August 30, 2024, GOODARZI and his wife were traveling to the George Bush Intercontinental Airport in Houston, Texas, in order to board an outbound international flight with a final destination of Iran. GOODARZI's luggage was searched. Contained within GOODARZI's luggage were the following parts:

- Two (2) MTE M-1775 Surge Suppressor
- One RS Industrial Pressure Switch 317-134
- One FANN Mud Balance Model 140
- Two (2) Pepperl + Fuchs Inductive Sensor NJ10-30GK-N23

6

## GOODARZI's KNOWLEDGE OF U.S. SANCTIONS AGAINST IRAN

19. GOODARZI has been aware of the sanctions and prohibitions on exporting items to Iran since at least 2018. Despite this knowledge, GOODARZI willfully exported and attempted to export items to end users in Iran. For example, in one email dated August 22, 2020, GOODARZI told an Iran-based customer that he could not source certain equipment from a U.S. company because of "sanctions" and that he had to acquire the requested equipment from a different source. Specifically, GOODARZI stated, "Due to current sanctions [U.S. Company] does not quote or sell equipment & parts to Iran. Consequently, I must procure your requested M.I. SWACO choke assemblies from other sources…"

20. Additionally, it was part of the conspiracy that GOODARZI structured his transactions with Iranian customers to circumvent sanctions and conceal his illegal conduct from others. For example, in an August 2021 email chain with a Russian tire supplier, GOODARZI explained that "due to restrictions" he would not be able to remit payment via banks for the tires destined for Iran and fabricated the shipping documentation reflecting that the tires would be transhipped to a third party country and not to Iran. As part of this transaction, along with others, GOODARZI regularly discussed transhipping products or having aircraft parts delivered to Oman or Dubai or other third party countries in order to have them forwarded on to Iran.

21. In another email, dated December 4, 2020, GOODARZI explicitly mentioned Iran being an "embargoed" country and informed an individual who was procuring items into Iran that a U.S. based company would not do business with him if such items were destined for Iran. Specifically, GOODARZI wrote, "They [the U.S. Company] know where the destination is & they have received the same request from multiple sources. They will give me prices after I sign a

7

document guaranteeing that the parts are not for embargoed countries such as Iran. I'm not willing to sign such a paper."

## COUNT ONE
**(Conspiracy to Violate the International Emergency Economic Powers Act)**

22. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated and realleged as if fully set forth herein.

23. From between on or about August 1, 2020, and continuing through on or about August 30, 2024, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the defendant,

**GHOLAM REZA GOODARZI a/k/a "Ron Goodarzi,"**

and others, known and unknown to the Grand Jury, did willfully and knowingly combine, conspire, confederate, and agree together and with each other, to export, reexport, and supply, and cause the exportation, reexportation, and supply, of goods and technology, directly and indirectly, from the United States to the Islamic Republic of Iran without having obtained authorization or the required license from the U.S. Department of the Treasury's OFAC, as required by Title 31, Code of Federal Regulations, Section 560.204.

In violation of Title 50, United States Code, Section 1705.

## COUNT TWO
**(Smuggling Goods from the United States)**

24. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated and realleged as if fully set forth herein.

25. On or about June 30, 2024, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the defendant,

**GHOLAM REZA GOODARZI a/k/a "Ron Goodarzi,"**

did knowingly and fraudulently attempt to export and send from the United States, merchandise, articles and objects, to wit: aircraft parts, and oil and gas parts, contrary to United States laws and regulations, to wit: Title 50, United States Code, Section 1705 and Title 31, Code of Federal Regulations, Section 560.204, and did fraudulently and knowingly attempt to conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

In violation of Title 18, United States Code, Sections 554(a) and 2.

## COUNT THREE
### (Smuggling Goods from the United States)

26. The allegations contained in paragraphs 1 through 21 of this Indictment are repeated and realleged as if fully set forth herein.

27. On or about August 30, 2024, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the defendant,

**GHOLAM REZA GOODARZI a/k/a "Ron Goodarzi,"**

did knowingly and fraudulently attempt to export and send from the United States, merchandise, articles and objects, to wit: aircraft parts, and oil and gas parts, contrary to United States laws and regulations, to wit: Title 50, United States Code, Section 1705 and Title 31, Code of Federal Regulations, Section 560.204, and did fraudulently and knowingly attempt to conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

In violation of Title 18, United States Code, Sections 554(a) and 2.

**FORFEITURE NOTICE**

28.  The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 28, United States Code, Section 2461(c).

29.  Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), upon conviction of violations of IEEPA, Title 50, United States Code, Section 1705, and Smuggling, Title 18, United States Code, Section 554, Defendant GOODARZI shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to said violation(s). The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes, or is derived from proceeds traceable to this offense.

30.  If any of the property described above, as a result of any act or omission of the Defendant:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the court;

    d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p) as incorporated by Title 28, United States Code, Section 2461(c).

A TRUE BILL:

*Original Signature on File*
FOREPERSON OF THE GRAND JURY

ALAMDAR S. HAMDANI
UNITED STATES ATTORNEY

*Heather Winter*
HEATHER WINTER
Assistant United States Attorney

*Christopher M. Cook*
CHRISTOPHER M. COOK
Trial Attorney
U.S. Department of Justice
National Security Division